**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| PUBLIC EMPLOYEES FOR | : | | |
| ENVIRONMENTAL RESPONSIBILITY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-2056 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 18, 20 |
| | : | | |
| ENVIRONMENTAL PROTECTION | : | | |
| AGENCY, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT; DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

Plaintiff Public Employees for Environmental Responsibility ("PEER") is a non-profit

organization "dedicated to research and public education concerning the activities and operations

of federal, state and local governments."  Compl. ¶ 4, ECF No. 2.  In this Freedom of

Information Act ("FOIA") lawsuit, PEER seeks to compel the Environmental Protection Agency

("EPA") to release records related to EPA's involvement with the "suspected or actual toxic

contamination at schools in the Santa Monica Malibu Unified School District" ("SMMUSD").

*Id.* ¶ 5.  Specifically, PEER objects to EPA's decision to withhold or redact certain records

pursuant to certain FOIA exemptions.

Before the Court are EPA's Motion for Summary Judgment (ECF. No. 18) and PEER's

Cross-Motion for Summary Judgment (ECF No. 20).  The motions are ripe and fully briefed.[1]

Upon consideration of the parties' submissions and the entire record, and for reasons explained

below, the Court will grant in part and deny in part EPA's motion for summary judgment and

deny PEER's cross-motion for summary judgment.

## II.  BACKGROUND

On August 19, 2014, PEER submitted a request for records to EPA Region 9, pursuant to

FOIA, 5 U.S.C. § 552.  *See* Def.'s Statement of Material Facts ("EPA Statement") ¶ 1, ECF No.

18-1; Pl.'s Statement of Material Facts ("PEER Statement") ¶ 1, ECF No. 20.  Specifically,

PEER requested:

> [E]mails and other written communications and notes of all communications from
> October 1, 2013 to the present concerning or referencing suspected or actual toxic
> contamination with [polychlorinated biphenyls ("PCBs")] between named EPA
> employees and any other EPA employees and (1) Senator Barbara Boxer, any
> member of her staff, or the staff of the Senate Environment and Public Works
> Committee which she chairs; (2) named members of the SMMUSD School
> Board; (3) named members of the Malibu City Council or the City Council as a
> group.

EPA Statement ¶ 1; PEER Statement ¶ 1.  PEER also sought a fee waiver, which was granted by

EPA.  *See* Decl. of Steven Armann ("Armann Decl.") ¶ 16, ECF No. 18-3; PEER Statement ¶ 2.

On December 5, 2014, PEER brought this suit, alleging that EPA had failed to provide any

records, as required by FOIA.  *See* Compl. ¶¶ 1, 7.  Soon after the Complaint was filed, EPA

responded to PEER's request by releasing a group of responsive documents on December 22,

2014, but withholding others pursuant to Exemptions 5 and 6 of FOIA.  *See* Armann Decl. ¶ 17;

---

[1] *See* Def.'s Mot. Summ. J. ("EPA Mot."), ECF No. 18; Pl.'s Cross-Mot. Summ. J., ECF
No. 20; Def.'s Mem. P. & A. in Supp. Reply ("EPA Reply"), ECF No. 24; Pl.'s Reply in Supp.
Cross-Mot. Summ. J. ("PEER Reply"), ECF No. 27.

EPA Statement ¶ 4; PEER Statement ¶ 4.  Subsequent discussions between PEER and EPA led

to the release of additional documents—some produced in full, and others partially redacted.  *See*

Armann Decl. ¶¶ 19–21; EPA Statement ¶¶ 5–7; PEER Statement ¶ 5.  This Court ordered EPA

to produce a *Vaughn* index providing information on redacted and fully withheld records.  *See*

Min. Order, Apr. 28, 2015.  The *Vaughn* indices submitted with EPA's motion for summary

judgment described 451 documents withheld in part and another set of documents withheld in

full.[2]  *See* Armann Decl. ¶ 22; EPA Statement ¶ 8; PEER Statement ¶ 6.  During the briefing of

these motions, EPA filed amended *Vaughn* indices that corrected certain errors identified by the

parties and reflected EPA's decision to release certain records that were not properly withheld.

*See* Notice of Filing Am. *Vaughn* Indices, ECF No. 26; *see also* Pl.'s Mem. Supp. Cross-Mot.

Summ. J. ("PEER Mem.") at 22–23, ECF No. 20 (arguing that withheld records were not intra-

or inter-agency materials); Second Decl. of Steven Armann ("2d Armann Decl.") ¶ 7, ECF No.

24-1 (releasing challenged documents).  Now before the Court are cross-motions for summary

judgment filed by each of the parties.  *See generally* Def.'s Mot. Summ. J. ("EPA Mot."), ECF

No. 18; Pl.'s Cross-Mot. Summ. J., ECF No. 20.

---

[2] The Court's review of the parties' filings reveals some confusion over the number of documents withheld in full.  EPA's statement of undisputed facts refers to 2020 documents withheld in full, while Mr. Armann, EPA's declarant, refers to only 15.  *Compare* EPA Statement ¶ 8 ("451 documents withheld in part and 2020 withheld in full") *with* Armann Decl. ¶ 22 ("451 documents withheld in part and 15 withheld in full").  In light of EPA's statement that the agency "[i]nitially . . . identified . . . 224 documents that were withheld in full," the 2020 figure appears to be an error.  *See* EPA Statement ¶ 5.  On the other hand, PEER's statement of undisputed facts refers to 202 documents.  *See* PEER Statement ¶ 6 ("451 documents withheld in part and 202 withheld in full").  The source of this figure is unclear.

## III.  LEGAL STANDARD

### A.  Summary Judgment

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009) (citing *Bigwood v. U.S. Agency for Int'l Dev.*, 484 F. Supp. 2d 68, 73 (D.D.C. 2007)).  Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A "material" fact is one capable of affecting the substantive outcome of the litigation.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "genuine" if there is enough evidence for a reasonable jury to return a verdict for the non-movant.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

The principal purpose of summary judgment is to streamline litigation by disposing of factually unsupported claims or defenses and determining whether there is a genuine need for trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  The movant bears the initial burden of identifying portions of the record that demonstrate the absence of any genuine issue of material fact.  *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 323.  In response, the non-movant must point to specific facts in the record that reveal a genuine issue that is suitable for trial.  *See Celotex*, 477 U.S. at 324.  In considering a motion for summary judgment, a court must "eschew making credibility determinations or weighing the evidence," *Czekalski v. Peters*, 475 F.3d 360, 363 (D.C. Cir. 2007), and all underlying facts and inferences must be analyzed in the light most favorable to the non-movant, *see Anderson*, 477 U.S. at 255.  Nevertheless, conclusory assertions offered without any evidentiary support do not establish a genuine issue for trial.  *See Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).

### B. Freedom of Information Act

FOIA was enacted so that citizens could discover "what their government is up to." *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (quoting *EPA v. Mink*, 410 U.S. 73, 105 (1973)). "[D]isclosure, not secrecy, is the dominant objective of [FOIA]." *U.S. Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). "Consistent with this purpose, agencies may withhold only those documents or portions thereof that fall under one of nine delineated statutory exemptions." *Elliot v. U.S. Dep't of Agric.*, 596 F.3d 842, 845 (D.C. Cir. 2010) (citing 5 U.S.C. § 552(b)). "[T]he exemptions are 'explicitly exclusive.'" *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989) (quoting *FAA Adm'r v. Robertson*, 422 U.S. 255, 262 (1975)). And it is the agency's burden to show that withheld material falls within one of these exemptions. *See* 5 U.S.C. § 552(a)(4)(B); *Elliott*, 596 F.3d at 845.

When assessing a summary judgment motion in a FOIA case, a court makes a *de novo* assessment of whether the agency has properly withheld the requested documents. *See* 5 U.S.C. § 552(a)(4)(B); *Judicial Watch v. U.S. Dep't of Homeland Sec.*, 598 F. Supp. 2d 93, 95 (D.D.C. 2009). To prevail on a motion for summary judgment, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. U.S. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks omitted) (quoting *Nat'l Cable Television Ass'n v. FCC*, 479 F.2d 183, 186 (D.C. Cir. 1973)).

To meet its burden, a defendant may rely on declarations that are reasonably detailed and non-conclusory. *See Citizens for Ethics & Responsibility in Wash. v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738

(D.C. Cir. 1981)).  The agency's justification is typically contained in a declaration or affidavit,

referred to as a "*Vaughn* index" after the case *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

An agency's affidavits or declarations are presumed to be submitted in good faith.  *See SafeCard*

*Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).  The purpose of a *Vaughn* index is "to

permit adequate adversary testing of the agency's claimed right to an exemption," *Nat'l Treasury*

*Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527 (D.C. Cir. 1986) (citing *Mead Data*

*Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977)), and therefore the

index must contain "an adequate description of the records" and "a plain statement of the

exemptions relied upon to withhold each record," *id.* at 527 n.9.

  "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it

appears 'logical' or 'plausible.'"  *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (quoting

*Gardels v. CIA*, 689 F.2d 1100, 1105 (D.C. Cir. 1982)).  Generally, a reviewing court should

"respect the expertise of an agency" and not "overstep the proper limits of the judicial role in

FOIA review."  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1388 (D.C. Cir.

1979).  Nonetheless, "exemptions from disclosure must be narrowly construed . . . and

conclusory and generalized allegations of exemptions are unacceptable."  *Morley v. CIA*, 508

F.3d 1108, 1114–15 (D.C. Cir. 2007) (citation and internal quotation marks omitted).

## IV.  ANALYSIS

  As EPA correctly notes, PEER has made no objection to the sufficiency of EPA's search

for responsive documents.  *See* Def.'s Mem. P. & A. in Supp. Reply ("EPA Reply") at 2 n.1,

ECF No. 24; *see also* Def.'s Mem. P. & A. Supp. Mot. Summ. J. ("EPA Mem.") at 5–7, ECF

No. 18 (arguing that EPA's search was adequate).  Similarly, EPA has not disputed PEER's

assertion that it constructively exhausted its administrative remedies, as required by FOIA.  *See*

Compl. ¶ 8; *see generally* EPA Mot. (failing to raise issue of exhaustion); EPA Mem. (same).

The only issue before the Court is whether EPA's decision to withhold certain documents, in

whole or in part, was appropriate.

Specifically, EPA has withheld documents pursuant to FOIA Exemptions 5 and 6, and

PEER argues that EPA has failed to meet its burden of proof that information has been properly

withheld under those provisions.  Because of inadequacies with EPA's *Vaughn* indices, the Court

will deny EPA's motion for summary judgment with regard to the deliberative process privilege.

The Court will grant EPA's motion for summary judgment for certain withholdings pursuant to

the attorney-client privilege, but deny the motion for documents, including all communications

that do not appear to include an attorney.  Finally, the Court will grant summary judgment for

EPA on the single remaining Exemption 6 withholding.

## A.  Exemption 5

EPA has withheld the vast majority of the records at issue in this case pursuant to FOIA

Exemption 5.  Exemption 5 permits the withholding of "inter-agency or intra-agency

memorandums or letters that would not be available by law to a party other than an agency in

litigation with the agency."  5 U.S.C. § 552(b)(5).  This exemption protects documents "normally

privileged in the civil discovery context," *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 365 F.3d

1108, 1113 (D.C. Cir. 2004), such as materials shielded by the attorney-client privilege, the

attorney work-product privilege and "what is sometimes called the 'deliberative process'

privilege," *U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8

(2001).  In other words, Exemption 5 covers "those documents, and only those documents,

normally privileged in the civil discovery context."  *Loving v. U.S. Dep't of Defense*, 550 F.3d

32, 37 (D.C. Cir. 2008) (citations omitted). The two Exemption 5 privileges at issue in this case are the deliberative process privilege and the attorney-client privilege.

1. Threshold Issue

As a threshold issue, Exemption 5 only covers records that are "inter-agency or intra-agency memorandums or letters." 5 U.S.C. § 552(b)(5). In other words, the Supreme Court has stated that, for Exemption 5 to apply to a document, the "source [of the withheld document] must be a government agency." *Klamath Water Users*, 532 U.S. at 8. PEER identified four withheld records—PRD 634, 926, 956, and 1583[3]—that it argued are not covered by Exemption 5 because they involve communications with outside consultants to SMMUSD. *See* PEER Mem. at 22–23. In response, EPA acknowledged PEER's argument and stated that the agency "re-examined [the] four documents," determined that they were "mistakenly redacted based on the belief that they were communications with EPA consultants," and decided to release them in full. *See* EPA Reply at 3 n.2; *see also* 2d Armann Decl. ¶ 7 (describing the release of the four documents that were mistakenly redacted). PEER has not asserted that any other documents fail to pass over the Exemption 5 threshold. In light of the parties' resolution of the threshold issue, there is no genuine dispute that the remaining documents withheld pursuant to Exemption 5 are intra- or inter-agency records for the purposes of Section 552(b)(5). Thus, the Court can turn to the question of whether EPA properly withheld materials under the deliberative process and attorney-client privileges incorporated by Exemption 5.

---

[3] The Court notes that the parties use both PRD and PROD as prefixes for documents at issue in this case. The difference is not material, but the Court will use PRD, which both parties use in their later filings and which corresponds more closely to the document identifiers found in the *Vaughn* indices.

2.  Deliberative Process

EPA relies on the deliberative process privilege to justify the vast majority of its

withholdings, but PEER makes several arguments challenging that reliance.  Because the Court

finds that EPA's *Vaughn* indices are inadequate, it cannot reach the question of whether the

material has been properly withheld under the deliberative process privilege.  Instead, the Court

will direct EPA to revise its *Vaughn* indices, taking into account the issues addressed here.

The deliberative process privilege "covers 'documents reflecting advisory opinions,

recommendations, and deliberations comprising part of a process by which governmental

decisions and policies are formulated.'"  *Klamath Water Users*, 532 U.S. at 8 (quoting *NLRB v.

Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)).  The privilege is intended "to enhance the

quality of agency decisions by protecting open and frank discussion among those who make

them within the Government."  *Id.* at 9 (internal citation and quotation marks omitted).  The

privilege "rests on the obvious realization that officials will not communicate candidly among

themselves if each remark is a potential item of discovery and front page news."  *Id.* at 8–9; *see

also Dow Jones & Co. v. U.S. Dep't of Justice*, 917 F.2d 571, 573–74 (D.C. Cir. 1990).

For the deliberative process privilege to apply, a court must first determine whether the

exempt document is both predecisional and deliberative.  *Access Reports v. U.S. Dep't of Justice*,

926 F.2d 1192, 1194 (D.C. Cir. 1991).  "A document is predecisional if it is generated 'before

the adoption of an agency policy.'"  *McKinley v. FDIC*, 744 F. Supp. 2d 128, 138 (D.D.C. 2010)

(quoting *Coastal States Gas Corp. v. U.S. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

"A document is deliberative if it 'reflects the give-and-take of the consultative process,'" *id.*

(quoting *Coastal States*, 617 F.2d at 866), "by which the decision itself is made," *Jowett, Inc. v.

U.S. Dep't of the Navy*, 729 F. Supp. 871, 875 (D.D.C. 1989) (quoting *Vaughn v. Rosen*, 523

F.2d 1136, 1144 (D.C. Cir. 1975)).  The "key question" in determining whether the material is

deliberative in nature "is whether disclosure of the information would 'discourage candid

discussion within the agency.'"  *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Commc'ns*

*Corp. v. U.S. Dep't of Air Force*, 815 F.2d 1565, 1567–68 (D.C. Cir. 1987)).

     "The need to describe each withheld document when Exemption 5 is at issue is

particularly acute because 'the deliberative process privilege is so dependent upon the individual

document and the role it plays in the administrative process.'"  *Animal Legal Def. Fund, Inc. v.*

*U.S. Dep't of Air Force*, 44 F. Supp. 2d 295, 299 (D.D.C. 1999) (quoting *Coastal States*, 617

F.2d at 867).  Under the deliberative process privilege, "unlike other exemptions where the

agency declaration and *Vaughn* index may be read in conjunction to provide an adequate

justification for application of an exemption to a class or category of records, to sustain its

burden of showing that records were properly withheld under Exemption 5, an agency must

provide in its declaration and *Vaughn* index precisely tailored explanations for each withheld

record at issue."  *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 188 (D.D.C. 2013).  "The

agency must establish 'what deliberative process is involved, and the role played by the

documents in issue in the course of that process.'"  *Senate of P.R. v. U.S. Dep't of Justice*, 823

F.2d 574, 585–86 (D.C. Cir. 1987) (quoting *Coastal States*, 617 F.2d at 868).  "In addition to

explaining the 'function and significance of the document(s) in the agency's decisionmaking

process,' the agency must describe 'the nature of the decisionmaking authority vested in the

office or person issuing the disputed document(s), and the positions in the chain of command of

the parties to the documents.'"  *Elec. Frontier Found. v. U.S. Dep't of Justice*, 826 F. Supp. 2d

157, 168 (D.D.C. 2011) (quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir.

1982)).

*a. Adequacy of the* Vaughn *Indices*

PEER argues that (1) EPA's declaration and *Vaughn* indices are inadequate because they do not identify specific deliberative decisions or decisionmaking processes, (2) EPA's declaration and *Vaughn* indices are inadequate because they fail to identify the nature of the author's decisionmaking authority or the relative positions in the chain of command of the author and recipients, (3) the *Vaughn* indices are inadequate because they provide only meaningless boilerplate descriptions of the claimed harm of disclosure, (4) EPA has failed to justify its withholding of draft documents, (5) EPA has withheld factual or technical material that is not deliberative, (6) EPA has withheld material that is post-decisional, and (7) many entries in the *Vaughn* indices do not correspond with the redacted documents. *See* PEER Mem. at 7–24. EPA responds that PEER's arguments "are based upon inaccurate, ill-informed, or legally incorrect conclusions." EPA Reply at 3. EPA argues that withheld documents do not need to be limited to a particular decision or policy, that duplicative justifications may be appropriate so long as factually distinct descriptions are provided, and that EPA has appropriately withheld deliberations related to factual and technical material. *See id.* at 3–15.

PEER's primary argument—that EPA's *Vaughn* indices are inadequate because they fail to tie withheld material to an agency decision or decisionmaking process—alone succeeds in defeating summary judgment for EPA with respect to the deliberative process privilege. *See* PEER Mem. at 7. Several of PEER's other arguments also stem from this basic idea. *Id.* at 17 ("A lot of the problem with EPA's claims about harm stems from the fact that it has not identified particular actions or decisions or decision-making processes . . . ."). EPA counters that it has, "where possible, identified the final agency decision associated with the document; but where this is not possible, an agency must merely establish 'what deliberative process is

involved, and the role played by the documents at issue in the courts of that process.'"  EPA

Reply at 9 (citing *Coastal States*, 617 F.2d at 866).

EPA's statement of the law is correct.  The Supreme Court has explained that "the need

to protect pre-decisional documents does not mean that the existence of the privilege turns on the

ability of an agency to identify a specific decision in connection with which a memorandum is

prepared." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975).  The Court

recognized that some deliberate processes would not ripen into agency decisions, and did not

want to interfere with that process.  *See id.*  Instead, an agency may establish what deliberative

*process* is involved, and the role that the withheld documents played in that process.  *See*

*Formaldehyde Inst. v. U.S. Dep't of Health & Human Servs.*, 889 F.2d 1118, 1123 (D.C. Cir.

1989).

The problem with EPA's argument is not its understanding of the law, but the application

of the law to this case.  EPA states that each entry in its *Vaughn* indices "clearly states the

function of each document, the decision at issue, and the ability of the author or the author's

authority to make the decision."  EPA Reply at 10.  As an example, EPA quotes language that

appears in nearly every entry in the *Vaughn* indices:

> At the time of this discussion, the Agency had not acted, and EPA was still
> deliberating on the best Agency-wide approach for coordinating its response. The
> author does not have decision-making authority with respect to providing the final
> response related to PCBs. The withheld information is deliberative because EPA
> employees and managers were still internally discussing issues concerning how to
> best coordinate the Agency's response, and were providing advice to the decision
> makers.

*Id.*

As stated above, the requirement that an agency describe all withheld material "when

Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so

dependent upon the individual document and the role it plays in the administrative process.'"

*Animal Legal Def. Fund*, 44 F. Supp. 2d at 299 (quoting *Coastal States*, 617 F.2d at 867).   At

the very least, EPA is required to provide the following information for each document at issue:

"(1) the nature of the specific deliberative process involved, (2) the function and significance of

the document in that process, and (3) the nature of the decisionmaking authority vested in the

document's author and recipient." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189

(D.D.C. 2013) (citing *Senate of P.R.*, 823 F.2d at 585–86; *Arthur Andersen*, 679 F.2d at 257–58;

*Coastal States*, 617 F.2d at 867–68).   EPA's *Vaughn* indices, including the language quoted

above, fail to meet that burden for each of the three requirements identified above.

      First, the agency is required to adequately describe the nature of the deliberative process

involved and the function and significance of the document in that process.   *See Taxation with*

*Representation Fund v. IRS*, 646 F.2d 666, 678 (D.C. Cir. 1981) (requiring an agency to show

the "function and significance of the documents in the agency's decisionmaking process");

*Coastal States*, 617 F.2d at 868 ("[T]he agency has the burden of establishing what deliberative

process is involved . . . .").   Although EPA is correct that it is not required to identify a specific

agency decision, *see Sears*, 421 U.S. at 151 n.18, it is required to show that the document was

"generated as part of a *definable* decision-making process."   *Gold Anti-Trust Action Comm., Inc.*

*v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135-36 (D.D.C. 2011)

(emphasis added) (citing *Petroleum Info. Corp. v. U.S. Dep't of the Interior*, 976 F.2d 1429,

1434 (D.C. Cir. 1992)).   EPA has failed to meet this burden with regard to a number of the

documents it has withheld.   PRD 954 provides a useful example.   *See* Am. *Vaughn* Index, vol. 2,

at 13, ECF No. 26-2.[4]   The full rationale for withholding material in the document states:

---

[4] EPA submitted its amended *Vaughn* indices as two separate attachments.   *See* Notice of
Filing Amended *Vaughn* Indices (attaching amended *Vaughn* indices as ECF Nos. 26-1 and 26-

The withheld redacted email discussion reflects pre decisional deliberations between EPA employees about EPA's response to the emerging issue at the beginning of EPA involvement.  At the time of this discussion, the Agency had not acted, and EPA was still deliberating on the best Agency-wide approach for coordinating its response.  The author does not have decisionmaking authority with respect to providing the final response related to PCBs. The withheld information is deliberative because EPA employees and managers were still internally discussing issues concerning PCBs in the schools and how to best coordinate the Agency's response, and were providing advice to the decision makers.  The record reflects analysis, recommendations, and opinions that were considered as part of the Agency's decision making process prior to its actions regarding the school.  The emails do not constitute a final Agency action.  Release would discourage open and frank discussions among its staff about the Agency's ongoing review of issues related to its response to the PCBs at the school.  Release would also have a chilling effect on agency decision-making processes, and on the Agency's ability to have internal discussions and consultations concerning the school. Furthermore, release would cause public confusion by disclosing rationales and reasons that were not in fact ultimately the grounds for EPA's final actions. The withheld information was not circulated outside the Agency.

*Id.* at 13–14.

EPA has helpfully provided separate descriptions and privilege claims for each document withheld in full or in part, but necessary information is missing from this extended explanation. Crucially, it is not clear from this description "what deliberative process is involved." *Coastal States*, 617 F.2d at 868.  Does EPA believe the deliberative process is "EPA's response to the emerging issue?"  Am. *Vaughn* Index, vol. 2, at 14.  Or "deliberating on the best Agency-wide approach for coordinating its response?"  *Id.*  Or, discussions "prior to its actions regarding the school?"  *Id.*  The answer is not clear.  Nor is it clear that any one of these descriptions is sufficiently "definable" to allow the Court to determine whether the communications at issue were predecisional.  *See Gold Anti-Trust Action Comm.,* 762 F. Supp. 2d at 135-36. Furthermore, the repeated language suggests that the withheld communications were considered

---

2).  For clarity, the Court refers to the separate attachments as Volume 1 (ECF No. 26-1) and Volume 2 (ECF No. 26-2).

"prior to [EPA's] actions regarding the school," but does not specify what those actions were or who authorized them.  *See* Am. *Vaughn* Index, vol. 2, at 14.  That context would help the Court to understand the decisions and decisionmaking processes at issue here.

The explanation provided by EPA's declarant is no more helpful.  Mr. Armann explains that the withheld materials "pertain to myriad EPA decision-making processes."  Armann Decl. ¶ 23.  In fact, the three "categories" of withheld information he describes are just that—broad subject matter categories—not decisionmaking processes related to agency action.  *Id.* (describing communications discussing the handing of PCB issues generally in schools, communications discussing the specific handling of PCB issues related to the SMMUSD, and emails discussing responses to stakeholders interested or involved in issues related to the Malibu schools).  Although EPA is not required to link each document to a specific action, it must do more to tie the materials to some definable process.  *See Nat'l Sec. Counselors*, 960 F. Supp. 2d at 189 ("The individual entries in the CIA's *Vaughn* index, however, do not elaborate on the '*specific* deliberative process to which the withheld [document] contributed.'") (quoting *Elec. Frontier Found.*, 826 F. Supp. 2d at 168); *Trea Senior Citizens League v. U.S. Dep't of State*, 923 F. Supp. 2d 55, 68 (D.D.C. 2013) ("Such a broad and opaque description of the deliberative process involved does not provide the Court with enough detail about whether these documents are deliberative and predecisional."); *cf. Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 264 (D.D.C. 2004) ("It is not enough to say that the documents relate, in some way, to 'actions taken or proposed in response to the discovery of anthrax in the mail,' for if they did not, the documents would not be before the court at all." (citations omitted)).  Armed only with these vague descriptions of the deliberative process involved, the Court does not have sufficient detail

to determine whether the material withheld in many of the documents at issue is both deliberative and predecisional.  *See Trea Senior Citizens League*, 923 F. Supp. 2d at 68.

Second, for many documents withheld by EPA, the *Vaughn* indices fail to describe with any amount of detail the "function and significance of the document(s) in the agency's decisionmaking process."  *Arthur Andersen*, 679 F.2d at 258 (quoting *Taxation with Representation*, 646 F.2d at 678).  This context is necessary for the Court to evaluate whether material is predecisional, because "if documents are not a part of a clear 'process' leading to a final decision on the issue, . . . they are less likely to be properly characterized as predecisional." *Coastal States*, 617 F.2d at 868.  The withholding rationale for PRD 954, quoted in full above, is illustrative on this point as well.  *See* Am. *Vaughn* Index, vol. 2, at 13–14.  The closest the entry comes to explaining the function and significance of the document is to state that the "record reflects analysis, recommendations, and opinions that were considered as part of the Agency's decision making process."  *Id.*  This language appears to be repeated for every entry in the *Vaughn* indices.  A general statement of this sort is not sufficient to carry the agency's burden to explain the function and significance of a document in the agency's decisionmaking process. *See Taxation with Representation*, 646 F.2d at 678.

Finally, for many of the documents at issue here, EPA's *Vaughn* indices and supporting declarations, taken as a whole, do not adequately describe the "nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents."  *Arthur Andersen*, 679 F.2d at 258 (internal quotation marks and citation omitted).  The D.C. Circuit has instructed that the "identity of the parties to the memorandum is important" to evaluating the withholding of material pursuant to the deliberative process privilege, because the relative position of the author and recipient aids

the court in determining whether a document is predecisional.  *Coastal Sates*, 617 F.2d at 868.

EPA's *Vaughn* indices do generally reveal the author and recipient of each document, but it

appears that every entry simply repeats the boilerplate statement that "the author does not have

decision-making authority with respect to providing the final response related to PCBs."  *See,*

*e.g.*, Am. *Vaughn* Index, vol. 1, at 1 (PRD 209), ECF No. 26-1; *id.* at 1–2 (PRD 211); *id.* at 3

(PRD 221); *see also* PEER Mem. at 15; EPA Reply at 10.  This vague, repeated statement fails

to describe the "relative positions in the agency's 'chain of command' occupied by the

document's author and recipient."  *Senate of P.R.*, 823 F.2d at 586 (quoting *Arthur Andersen*,

679 F.2d at 258).

Conclusory statements that every author does not have decisionmaking authority—

without providing additional context, identifying the authority of the recipient, or tying the

record to a particular decisonmaking process—do not give the Court enough information to

determine whether the deliberative process privilege applies.  The repeated assertion, which

raises the question of who at EPA Region 9 does have decision-making authority, is further

undermined by the *Vaughn* index entries related to EPA Region 9 Regional Administrator, Jared

Blumenfeld.  PEER points to the multiple emails that Mr. Blumenfeld sent to subordinates, and

the corresponding *Vaughn* indices contain the same conclusory statement that the "author does

not have decision-making authority with respect to providing the final response related to PCBs."

*See e.g.*, Am. *Vaughn* Index, vol. 1, at 22–23 (PRD 421); *id.* at 47–48 (PRD 1861); *id.* (PRD

1871); Am. *Vaughn* Index, vol. 2, at 55 (PRD 1884); *see also* PEER Mem. at 16.  Surprisingly,

EPA has not responded to this point.  Presumably, as head of EPA Region 9, Mr. Blumenfeld

had some decision-making authority, but the *Vaughn* indices indicate otherwise.  In fact, some of

the decisions at issue in this case were made under Mr. Blumenfeld's signature.  *See, e.g.*,

Armann Decl. ¶ 12 (describing EPA's October 31, 2014 "formal approval to the District covering certain clean-up activities"); PEER Mem. at 16 (noting that Mr. Blumenfeld signed the October 31, 2014 letter).  Without more information regarding the "the nature of the decisionmaking authority vested in the document's author and recipient," the Court is unable to determine whether the deliberative process privilege applies to the withheld documents.  *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 189 (D.D.C. 2013) (citations omitted).

Because of the inadequacy of the documentation provided by EPA in support of its deliberative process privilege withholdings, the Court concludes "'not that the documents are not exempt as a matter of law, but that the agency has failed to supply' in its *Vaughn* submissions 'the minimal information necessary to make a determination' concerning applicability of the deliberative process privilege." *Elec. Frontier Found.*, 826 F. Supp. 2d at 173 (quoting *Coastal States*, 617 F.2d at 861).[5]  Therefore, the Court will deny summary judgment to EPA on the issue of its withholding determinations pursuant to the deliberative process privilege.

### b.  Supplemental *Vaughn* Indices

The Court has several options for how to proceed now that it has found EPA's current *Vaughn* indices are insufficient for many of the documents withheld in full or in part.  Federal courts have the authority to order agencies to produce any records that have been withheld improperly.  *See* 5 U.S.C. § 552(a)(4)(B); *see also Vaughn v. Rosen*, 484 F.2d 820, 824 (D.C. Cir. 1973) ("If the factual nature of the documents were so clearly established on the record, then the court would inquire no further and would make the legal ruling as to whether they fit within

---

[5] Because EPA has failed to justify the withholding of many of the documents at issue, the Court is unable to reach several of PEER's other arguments, such as whether EPA has withheld post-decisional material or whether EPA has withheld factual or technical material that is not deliberative.  The Court will, however, provide additional guidance on these issues in light of EPA's option to file supplemental *Vaughn* indices.  *See infra* Part IV.A.2.b.

the defined exemption or exemptions.").  If a court finds that an "agency fails to provide a sufficiently detailed explanation to enable the district court to make a *de novo* determination of the agency's claims of exemption, the district court then has several options, including inspecting the documents *in camera,* requesting further affidavits, or allowing the plaintiff discovery." *See Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998).  The D.C. Circuit has also explained that "a district court should not undertake *in camera* review of withheld documents as a substitute for requiring an agency's explanation of its claimed exemptions." *Id.*  Therefore, the Court finds that the best approach is to direct the agency to revise its *Vaughn* submissions, addressing the issues noted by the Court.

It may very well be the case that many of the redacted documents are covered by the deliberative process privilege.  Indeed, prior decisions have determined that the privilege protects from disclosure documents resembling some of the materials at issue here.  *See, e.g.*, *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1196–97 (D.C. Cir. 1991) (protecting memorandum written to prepare senior agency officials for Congressional testimony); *Competitive Enter. Inst. v. EPA*, 12 F. Supp. 3d 100, 120 (D.D.C. 2014) (protecting internal agency communications discussing "*how* to communicate with members of Congress . . . and *how* to prepare for potential points of debate or discussion [in upcoming congressional testimony]" (citation omitted)); *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 880 F. Supp. 2d 105, 111–12 (D.D.C. 2012) (protecting email exchanges discussing draft responses to press inquiries); *Exxon Corp. v. U.S. Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) (protecting documents marked as "draft").  But EPA must do more to show that the withholdings are proper.

PEER argues that EPA fails to demonstrate the harm that each disclosure would cause and "merely repeats the same boilerplate language" for each withholding, PEER Mem. at 17,

instead of providing a "specific and detailed proof" of harm, *id.* (quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 258 (D.C. Cir. 1977)).  Going forward, however, EPA is not prohibited from relying on repetitive language, as long as the agency describes the nature of the deliberative process involved and the function and significance of the withheld material in that process.  *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 147 (D.C. Cir. 2006) (explaining that "categorization and repetition provide efficient vehicles by which a court can review withholdings" and that "particularity may actually impede court review and undermine the functions served by a *Vaughn* index").  PEER connects its objection to EPA's articulation of the harm of disclosure to the agency's failure to identify "particular actions or decisions or decision-making processes, which makes it impossible to identify the harm that would stem from revealing the deliberations leading to them."  PEER Mem. at 17.  Thus, to the extent EPA's supplemental submissions do show "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested in the document's author and recipient," *Nat'l Sec. Counselors*, 960 F. Supp. at 189 (citations omitted), repetitive language that logically connects disclosure with the threat of harm may constitute the necessary "specific and detailed proof" of harm. *Mead Data*, 566 F.2d at 258.  Presumably, clarifying the nature of the deliberative process at issue in each document will also allow EPA to address PEER's argument that EPA has withheld post-decisional documents.  *See* PEER Mem. at 21–23; *see also Judicial Watch, Inc. v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 260 (D.D.C. 2004) ("The most basic requirement of the privilege is that a document be antecedent to the adoption of an agency policy.").

Although the inadequacy of EPA's current *Vaughn* indices prevents the Court from evaluating the particular documents, the Court briefly addresses the parties' disagreement over

technical data.  *See* PEER Mem. at 18–21; EPA Reply 14–15.  Generally, severable and purely

factual material should be disclosed.  *See Wolfe v. Dep't of Health & Human Servs.*, 839 F.2d

768, 774 (D.C. Cir. 1988) (en banc).  However, factual information must also be examined "in

light of the polices and goals that underlie the deliberative process privilege" and the "context in

which the documents were used."  *Id.* at 775; *see also Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,

861 F.2d 1114, 1119 (9th Cir. 1988) (avoiding a "semantics debate" and focusing on "the

ultimate objective of exemption 5" to protect the deliberative process).  Thus, to the extent EPA

establishes that the privilege applies to its withholdings, the privilege may also extend to factual

matter which is used by the agency to develop policy.  *See, e.g., Reliant Energy Power*

*Generation, Inc. v. Fed. Energy Regulatory Comm'n*, 520 F. Supp. 2d 194, 206 (D.D.C. 2007);

*Brannum v. Dominguez*, 377 F. Supp. 2d 75, 83 (D.D.C. 2005).  But the agency must specify

how the release of the purely technical data, in this particular context, would cause the type of

harm the deliberative process is designed to avoid.

Finally, EPA is reminded that the D.C. Circuit has stated that, "FOIA litigants are entitled

to assume that the agency's *Vaughn* index is accurate in every detail" and that "[t]here is no

excuse for submitting a *Vaughn* index that contains errors, even minor ones."  *Schiller v. NLRB*,

964 F.2d 1205, 1209 (D.C. Cir. 1992), *abrogated on other grounds*, *Milner v. Dep't of Navy*, 562

U.S. 562 (2011).[6]

Some of EPA's current *Vaughn* index entries do a better job of meeting the agency's

burden.  For example, the rationale for withholding PRD 1986 reads, in relevant part:

---

[6] The Court also notes that some of the fields in EPA's amended *Vaughn* indices appear
to be cut off by the edge of the page in certain locations.  EPA should ensure that any
supplemental *Vaughn* indices are easily readable and searchable, even after being converted to
PDF format.

> The withheld redacted email discussion reflects pre-decisional deliberations
> between EPA employees and managers about EPA's concerns regarding the
> presence of PCBs at Malibu High School/Middle School. The withheld language
> is from an e-mail from Tanya Mottley, Office of Pollution Prevention and Toxics,
> OCSPP to Region 9 *concerning the appropriate response to Cami Winikoff*.
>
> At the time of this discussion and the draft email, the Agency had not decided on
> its position regarding the PCBs, and EPA was still deliberating on the best
> Agency-wide approach for coordinating its response. *Here, the draft email was
> being circulated for review and comment.* The author does not have decision-
> making authority with respect to providing the final response related to PCBs.

Am. *Vaughn* Index, vol. 2, at 81–82 (emphases added).  This description does a far better job of

identifying a specific decisionmaking process (deciding how to respond to a request from a

particular individual) and what role the communication at issue played in that process

(circulating a draft response for review and comment).[7]  *Id.*

At this time, the Court does not dictate the format of EPA's supplemental *Vaughn*

indices.  However, if EPA provides supplemental declarations or *Vaughn* indices, they must

show, at the least:  "(1) the nature of the specific deliberative process involved, (2) the function

and significance of the document in that process, and (3) the nature of the decisionmaking

authority vested in the document's author and recipient."  *Nat'l Sec. Counselors v. CIA*, 960 F.

Supp. 2d 101, 189 (D.D.C. 2013) (citing *Senate of P.R.*, 823 F.2d at 585–86; *Arthur Andersen*,

679 F.2d at 257–58; *Coastal States*, 617 F.2d at 867–68).

---

[7] The Court also notes that this entry includes boilerplate language related to the
purported harm of disclosure.  *See* Am. *Vaughn* Index, vol. 2, at 82 ("Release would discourage
open and frank discussions . . . related to [EPA's] response to the PCBs at the school," "would
also have a chilling effect on agency decision-making processes," and "would cause public
confusion . . . .").  Although the language is repetitive, it will be read in the context of EPA's
description of the role the document played in the deliberative process.

3.  Attorney-Client Privilege

EPA has withheld material in a much smaller collection of documents pursuant to the attorney-client privilege.  PEER challenges all of EPA's withholdings under this privilege as well.  To the extent EPA seeks summary judgment related to communications that do not appear to include an attorney, the motion will be denied.  Next the Court turns to a smaller subset of documents that include an attorney in some portion of the communication.  Upon consideration of EPA's *Vaughn* indices, Mr. Armann's declaration, and the redacted documents presented by PEER, the Court will grant summary judgment to EPA with regard to four of the documents, but deny EPA's motion with regard to the remainder.

Exemption 5 extends to documents protected by the attorney-client privilege, meaning agencies are not required to disclose privileged material.  "The attorney-client privilege protects confidential communications from clients to their attorneys made for the purpose of securing legal advice or services," as well as "communications from attorneys to their clients if the communications rest on confidential information obtained from the client." *Tax Analysts v. IRS*, 117 F.3d 607, 618 (D.C. Cir. 1997) (quotation marks and citations omitted).  "In the governmental context, the 'client' may be the agency and the attorney may be an agency lawyer." *Id.*  Where an agency lawyer serves in a mixed capacity that involves responsibilities both within and "outside the lawyer's sphere," the agency employee's communications will only be protected to the extent that they involve his or her professional, legal capacity. *In re Sealed Case,* 737 F.2d 94, 99 (D.C. Cir. 1984).  The government bears the burden of proving, through "detailed and specific information," that the withheld information falls within the attorney-client privilege. *See Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 1998).  For the

government to succeed on a motion for summary judgment, it must marshal its supporting documentation to prove:

> (1) [T]he holder of the privilege is, or sought to be, a client; (2) the person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, outside the presence of strangers, for the purpose of securing legal advice; and (4) the privilege has been claimed by the client.

*Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 153–54 (D.D.C. 2012) (citing *In re Sealed Case*, 737 F.2d at 98–99).  Furthermore, a "fundamental prerequisite to the assertion of the privilege" is "confidentiality both at the time of the communication and maintained since."  *Coastal States*, 617 F.2d at 863.

EPA has withheld 17 records pursuant to the attorney-client privilege.  *See* EPA Statement ¶ 16–17; Armann Decl. ¶¶ 30–31; PEER Statement ¶ 6.  In its motion for summary judgment, EPA argued that each of the redacted portions "contained communications between an EPA attorney and a client office relating to a legal matter, for which the client office sought legal advice, as well as facts divulged by the client in order to obtain legal counsel."  EPA Mem. at 16.  EPA relies on its declarant, Steven Armann, to support this statement.  *Id.*  Mr. Armann declares that the 17 redacted documents "contain email conversations with [Office of Regional Counsel] and [Office of General Counsel] attorneys concerning issues related to the handling of PCBs at the Malibu schools."  Armann Decl. ¶ 30.  Mr. Armann describes two records—PRD 834 and 838—in greater detail, but does not provide any additional specific description of the other 15 records.  *Id.* ¶ 31.  PEER challenges the withholding of all 17 records, pointing to deficiencies in EPA's *Vaughn* indices and arguing that "the justifications for withholding generally do not meet the requirements of Exemption 5."  PEER Mem. at 25.  PEER identifies and addresses each of

the 17 documents that it believes EPA is withholding pursuant to the attorney-client privilege. *Id.* at 25–28.[8]

> *a. Withheld Records that Do Not Include an Attorney on the Communication*

The Court will first turn to records withheld pursuant to the attorney-client privilege that do not appear to include an attorney on the communication.  PEER has identified 11 email communications withheld under the attorney-client privilege that it argues do not include any attorney:  PRD 595, 597, 1037, 1340, 1346, 1473, 1443,[9] 1645, 1936, 1948, and 1986.  *Id.* Following review of the redacted documents and their respective entries in the *Vaughn* indices, the Court finds that one of the records—PRD 1645—does, in fact, appear to at least copy an attorney on the last email in the chain.  *See* PEER Mot. Ex. 103, ECF No. 20-102.  The Court agrees, however, that the remaining ten records do not include an attorney.  PRD 595 provides a particularly clear example.  The relevant entry in the *Vaughn* index refers to "legal advice provided by an attorney, Ivan Lieben, to his EPA program clients," *see* Am. *Vaughn* Index, vol. 1, at 34, but the redacted email chain itself contains no reference to Mr. Lieben, including in any of the "To:" or "From:" fields.  *See* PEER Mot. Ex. 100, ECF No. 20-99.  Following the Court's review of the ten emails in this category, none appear to include an attorney as either the author or recipient of the communication.

It goes without saying that the attorney-client privilege only covers "confidential communications between *an attorney* and his client."  *Mead Data Cent., Inc. v. U.S. Dep't of Air*

---

[8] PEER has identified the following records that it believes EPA has withheld pursuant to the attorney-client privilege: PRD 538, 595, 597, 834, 838, 935, 1037, 1340, 1346, 1438, 1443, 1473, 1575, 1645, 1936, 1948, and 1986.  *See* PEER Mem. at 25–28.  EPA has not provided its own list of the 17 records withheld pursuant to the attorney-client privilege nor has it objected to PEER's list.

[9] The amended *Vaughn* indices appear to remove the reference to attorney-client privilege in the entry for PRD 1443.  *See* Am. *Vaughn* Index, vol. 2, at 59–60.

*Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) (emphasis added).  The government bears the burden to prove that the "person to whom the communication is made is a member of the bar or his subordinate and, in connection with the communication at issue, is acting in his or her capacity as a lawyer." *Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 841 F. Supp. 2d 142, 154 (D.D.C. 2012) (citing *In re Sealed Case*, 737 F.2d at 98–99).

Here, EPA relies only on a brief paragraph found in Mr. Armann's Declaration that refers to the 17 records, but identifies and describes only two.  *See* Armann Decl. ¶¶ 30–31.  The entries in the *Vaughn* indices appear to be incorrect (as in the case of PRD 595).  PEER has provided the redacted records, which appear to show that no attorney was included on these documents.  *See* PEER Mem. at 25–28.  In light of this evidence, EPA has failed to carry its burden to show that the withheld communications were made to a member of the bar, acting in his or her capacity as a lawyer.  *See Judicial Watch, Inc.*, 841 F. Supp. 2d at 154.  For this reason, the Court will deny EPA's motion for summary judgment to the extent that it seeks a ruling that information has been appropriately withheld from PRD 595, 597, 1037, 1340, 1346, 1473, 1443, 1936, 1948, and 1986 on the basis of the attorney client privilege.

Where the agency's description of the records fails to establish the elements of the claimed privilege, "the district court has the discretion to order disclosure or to afford the agency an additional opportunity to fully discharge its burden." *Id.* at 155.  Given the apparent problems with the *Vaughn* indices and the fact that it is not entirely clear that the parties are discussing the same documents, the Court believes affording EPA another opportunity is the most appropriate outcome.  Accordingly, the Court will exercise its discretion to permit EPA a further and final opportunity to establish the applicability of the attorney-client privilege to these ten records.

### b. Withheld Records that Include an Attorney on the Communication

The remaining seven records withheld by EPA pursuant to the attorney-client privilege appear to include an attorney as either an author or recipient of at least one link in the email chain: PRD 538, 834, 838, 935, 1438,[10] 1575, and 1645.  PEER objects to these withholdings on several grounds.  The Court will first address the documents that EPA has failed to show are protected by the attorney-client privilege, before turning to the four documents that EPA has shown are privileged.

The Court first considers PRD 834 and 838, the only documents explicitly addressed in Mr. Armann's declaration.  *See* Armann Decl. ¶ 31.  PEER argues that "the actual withheld documents only contain communications from EPA staff, not from attorneys" and that, although Mr. Lieben is on the distribution list, "there is no response from him, providing legal advice or otherwise."  PEER Mem. at 25.  EPA's *Vaughn* index states that PRD 834 and 838, which are part of the same chain of emails, include language that "pertains to legal advice provided by an attorney, Ivan Lieben, to his EPA program clients about how to proceed in regard to questions related to EPA's position concerning the activities at the school."  *See Vaughn* Index at 216–217, ECF No. 18-2.[11]  Mr. Armann's declaration, however, seems to state a different rationale for the withholding.  Mr. Armann declares that the "[l]anguage redacted from [PRD 834 and 838] contains legal advice provided by an ORC [Office of Regional Counsel] attorney to his EPA

---

[10] The initial *Vaughn* index entry for PRD 1438 failed to include an explanation of the attorney-client privilege.  *See Vaughn* Index at 292–93, ECF No. 18-2.  The Amended *Vaughn* indices corrected this error, and explained EPA's rationale for withholding material protected by the attorney-client privilege.  *See* Am. *Vaughn* Index, vol. 2 at 59.

[11] Confusingly, the Court was not able to find any reference to these two documents in the amended *Vaughn* indices.

clients."[12]  *See* Armann Decl. ¶ 31.  The redacted language, however, appears in an email drafted

and sent by Mr. Armann, not an attorney.  *See id.*; *see also* PEER Mot. Ex. 98, ECF No. 20-97;

PEER Mot. Ex. 99, ECF No. 20-98.  In other words, the rationale for withholding the language

seems to be that it encompasses previously provided legal advice even though it was drafted by a

non-lawyer, not that Mr. Armann was providing information for the purposes of seeking legal

counsel.  If that is EPA's argument, the agency has put forth no authority in support of its

position.  The Court also notes that each of the document's redactions are designated as

deliberative process privilege withholdings, further obscuring EPA's rationale.  In light of the

confusion created by EPA's filings, the Court finds that the agency has not met its burden to

show that these two documents are privileged at this time.  *See Judicial Watch, Inc.*, 841 F.

Supp. 2d at 153–54 (citing *In re Sealed Case*, 737 F.2d at 98–99) (setting forth the standard for

the application of the attorney-client privilege).

Next the Court turns to PRD 1645.  PEER argues that EPA withheld this document under

the attorney-client privilege despite the fact that no attorney is included on the communication.

PEER Mem. at 26.  In fact, the last email in the chain appears to at least copy Mr. Lieben.

Nevertheless, the Court finds that EPA has failed to show that this document was properly

withheld.  EPA's *Vaughn* index again states that the "redacted language pertains to legal advice

provided by an attorney, Ivan Lieben, to his EPA program clients."  *Vaughn* Index at 122–123.

The document includes a series of emails, many of which are redacted in whole or in part.

Crucially, however, only one of the redactions is designed as withheld under the attorney-client

privilege, and all others designations refer to the deliberative process privilege. *See* PEER Mot.

---

[12] Mr. Armann's declaration does not make clear whether the ORC attorney he refers to is
also Mr. Lieben.

Ex. 103, ECF No. 20-102.  The single redaction made under the attorney-client privilege is found in an email that was sent before Mr. Lieben was included in the communication.  *See id.*  Thus, based on the record before the Court, it seems impossible that the language in question was communicated to Mr. Lieben for the purpose of seeking legal counsel.  *See Judicial Watch, Inc.*, 841 F. Supp. 2d at 153–54.  Although the Court will deny EPA's motion for summary judgment with regard to these documents, for the reasons previously explained, *see supra* Part IV.A.3.a, the Court will exercise its discretion to permit EPA a further and final opportunity to establish the applicability of the attorney-client privilege to PRD 834, 838, and 1645.

The Court is convinced, however, that EPA properly withheld the remaining four documents—PRD 538, 935, 1438, and 1575—and thus grants summary judgment for EPA on that issue.  PEER makes a range of arguments in opposition to these withholdings.

For instance, PEER objects to the withholding of PRD 538 because "the email chain contains only an email from Steve Armann, a program person, to Mr. Lieben," an attorney. PEER Mem. at 26.  PEER's argument is misplaced.  The application of the attorney-client privilege does not turn on a formalistic rule requiring the attorney to respond to a client with legal advice in the same series of communication.  The privilege protects "confidential communications between an attorney and his client relating to a legal matter for which the client has sought professional advice,"  *Mead Data*, 566 F.2d at 252, based on the rationale that lawyers can only provide effective advocacy and advice when they are "fully informed by the client."  *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).  Although PEER seems to object to the withholding of email chains where an attorney is only a recipient, it has provided no authority to support that position.  While it is clear that the privilege may also protect an attorney's communication to a client, the privilege "principally applies to facts divulged by a

client to his attorney." *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 384 F. Supp. 2d

100, 114 (D.D.C. 2005).  PEER appears to acknowledge this point when it argues that:

> [A]lthough it is possible for a communication from the client to the attorney to be
> privileged, this would only be the case if the communication seeks legal advice
> and if it contains "private information concerning the agency."  EPA has provided
> no information which could demonstrate that the withheld material meets either of
> these requirements.

Peer Mem. at 24–25 (citations omitted).

In fact, EPA has provided evidence, by declaration and in its *Vaughn* index, that these

withholdings meet those requirements.  The *Vaughn* indices contain an entry for each of the

remaining four documents that briefly describes the contents of the record, and states that

"redacted language pertains to legal advice provided by an attorney."  *See, e.g.*, Am. *Vaughn*

Index, vol. 1, at 34–35 (stating, with regard to PRD 538, that the "redacted language pertains to

legal advice provided by an attorney, Ivan Lieben, to his EPA program clients about how to

proceed in regard to a request for information and documents from a member of the public

. . . .").  EPA's declarant has also stated that the "redacted material in these records was kept

confidential and not transmitted to third parties."  Armann Decl. ¶ 31.  The D.C. Circuit has held

that confidentiality should be inferred between an attorney and a client when the

communications suggest that "the government is dealing with its attorneys as would any private

party seeking advice to protect personal interests."  *Coastal States Gas Corp. v. U.S. Dep't of

Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).  That is the case here.  Thus, upon consideration of

EPA's *Vaughn* indices, Mr. Armann's declaration, and the redacted documents presented by

PEER, the Court finds that EPA has shown that the attorney-client privilege applies to each of

the four documents described here.  PEER also argues that certain records—specifically PRD

935 and 1575—include neutral, objective analyses of agency regulations and thus are not

protected by the attorney-client privilege.  *See* PEER Mem. at 27.  It is true that the D.C. Circuit

has stated that "neutral, objective analyses of agency regulations" are not protected by the privilege. *Coastal States,* 617 F.2d at 863. Subsequent decisions from the D.C. Circuit have emphasized, however, that the reason for that rule is to ensure the openness of an otherwise hidden body of "private law," where a government counsel "rendering [a] legal opinion in effect is making law." *Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997) (interpreting *Coastal States*). In other words, it "is this [law-making] quality, not the objective character of the legal analyses in the documents" that is significant. *Id.* After considering these issues, the court concluded that it would be inappropriate for Exemption 5 and the attorney-client privilege to "be used to protect this growing body of agency law from disclosure to the public." *Id.*

That is simply not the case here. The two documents at issue contain "explanations of certain Agency policies" (PRD 1575), and concern "legal interpretation of EPA regulations" (PRD 935), but they are not "law-making" or authoritative, nor do they contribute to a body of "secret law." The facts being provided, and the legal advice sought, appear to relate to internal decisionmaking regarding PCB cleanup at Malibu (PRD 935) and general policies with regard to PCBs in schools (PRD 1575), not an authoritative statement of "working law." *See Elec. Frontier Found. v. U.S. Dep't of Justice*, 739 F.3d 1, 10 (D.C. Cir. 2014) ("The OLC Opinion does not provide an authoritative statement of the FBI's policy. It merely examines policy options available to the FBI. Therefore, the OLC Opinion is not the 'working law' of the FBI.").

Thus, the Court finds that EPA has met its burden of establishing the essential elements of the attorney-client privilege for these four documents. *See In re Sealed Case*, 737 F.2d at 98–99. Accordingly, the Court grants summary judgment with respect to EPA's withholding of PRD 538, 935, 1438, and 1575 based on Exemption 5 and the attorney-client privilege.

### B.  Segregable Factual Material

The next issue that the Court must address is segregability.  FOIA requires that "[a]ny reasonably segregable portion of a record . . . be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Under FOIA, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  An agency is not, however, required to segregate non-exempt material if "the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value."  *Neufeld v. IRS,* 646 F.2d 661, 666 (D.C. Cir. 1981), *overruled on other grounds by Church of Scientology of California v. IRS,* 792 F.2d 153 (D.C. Cir. 1986).  The agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," *Hodge v. FBI,* 703 F.3d 575, 582 (D.C. Cir. 2013), but that does not excuse the agency from  carrying its evidentiary burden to fully explain its decisions on segregability.  *See Army Times Pub. Co. v. U.S. Dep't of Air Force,* 998 F.2d 1067, 1068 (D.C. Cir. 1993).

The adequacy of an agency's *Vaughn* index is a crucial factor when a district Court undertakes a segregability analysis.  *See, e.g., Loving v. U.S. Dep't of Defense*, 550 F.3d 32, 41 (D.C. Cir. 2008) (stating that "the description of the document set forth in the *Vaughn* index and the agency's declaration that it released all segregable material" are "sufficient for [the segregability] determination"); *Johnson v. Exec. Office for U.S. Attorneys,* 310 F.3d 771, 776 (D.C. Cir. 2002) (upholding agency's segregation efforts based on "comprehensive *Vaughn* index" and "the affidavits of [agency officials]").  Here, EPA argues that it is impossible to further segregate and release purely factual material from withheld documents without disclosing

deliberative communications.  *See* EPA Mem. at 16; Armann Decl. ¶ 32; EPA Reply at 18. However, in light of the problems with EPA's *Vaughn* index identified above, the Court concludes that, at this time, EPA's segregability efforts do not meet the standard articulated in *Loving* and *Johnson.*

## C.  Exemption 6

Under Exemption 6, an agency may withhold "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The Supreme Court has interpreted the term "similar files" broadly so as "to cover detailed Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (internal quotation mark omitted) (quoting H.R. Rep. No. 1497, at 11 (1966)). Therefore, not only does the exemption protect files, "but also bits of personal information, such as names and addresses, the release of which would 'create a palpable threat to privacy.'"  *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (brackets and internal quotation mark omitted) (quoting *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 152 (D.C. Cir. 2006)).  "The information in the file 'need not be intimate' for the file to satisfy the standard, and the threshold for determining whether information applies to a particular individual is minimal."  *Milton v. U.S. Dep't of Justice*, 783 F. Supp. 2d 55, 58 (D.D.C. 2011) (quoting *N.Y. Times Co. v. Nat'l Aeronautics & Space Admin.*, 920 F.2d 1002, 1006 (D.C. Cir. 1990)).

Once this threshold determination is met, a court must next ask whether disclosure would compromise a "substantial" privacy interest, since FOIA requires the release of information "[i]f no significant privacy interest is implicated."  *Multi Ag Media LLC v. U.S. Dep't of Agric.*, 515 F.3d 1224, 1229 (D.C. Cir. 2008) (alteration in original) (internal quotation marks omitted)

(quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)).  This standard, however, "means less than it might seem," as a substantial privacy interest is "anything greater than a *de minimis* privacy interest."  *Id*. at 1229–30.  If a substantial privacy interest exists, a court next tests whether release of such information would constitute a "clearly unwarranted invasion of personal privacy," *Wash. Post Co. v. U.S. Dep't of Health & Human Servs.*, 690 F.2d 252, 260 (D.C. Cir. 1982) (internal quotation marks omitted) (quoting 5 U.S.C. § 552(b)(6)), by balancing "the privacy interest that would be compromised by disclosure against any public interest in the requested information," *Multi Ag Media*, 515 F.3d at 1228.  "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier v. FDIC*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation marks omitted) (alterations in original) (quoting *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 497 (1994)).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1493 (D.C. Cir. 1993) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)).

PEER has waived its right to challenge all Exemption 6 withholdings, except for a single document.  PEER's only remaining Exemption 6 challenge relates to document PRD 367, which it claims "discuss[es] the activities of Hugh Kaufman, an EPA employee involved with the issues in Malibu."  PEER Statement ¶ 7; *see also* EPA Statement ¶ 19; Armann Decl. ¶ 33; Pl.'s Statement of Disputed Material Facts ¶ 19 ("PEER Statement of Disputed Facts"), ECF No. 20. EPA states that PRD 367 is "an e-mail between two EPA employees [c]oncerning Hugh Kaufman, an EPA employee involved in actions at Malibu."  EPA Mem. at 17.  According to

EPA, the agency "weighed the substantial privacy interest in [PRD 367] against the minimal or non-existent public interest in disclosure," and determined that releasing the record would be an unwarranted invasion of personal privacy. *Id.* at 18.  In support of its argument, EPA relies on Mr. Armann's Declaration, which states that "[r]elease of [PRD 367] would constitute a clearly unwarranted invasion of personal privacy and would not reveal the operations or activities of the Federal government in any meaningful way."  Armann Decl. ¶ 33.  Similarly, the original *Vaughn* indices state that "[t]here is no public interest in the individual's personal information or other employees' personal opinion of the employee."  *Vaughn* Index at 94–95.[13]

PEER agrees with EPA's general characterization of PRD 367 as an email regarding Mr. Kaufman, *see* PEER Statement ¶ 7, but it "dispute[s] that PRD 367 is properly withheld under Exemption 6."  PEER Statement of Disputed Facts ¶ 19.  The remainder of PEER's briefing, however, including its motion and all supporting filings, never addresses the Exemption 6 issue again.  The Court found no further discussion, argument, or even mention of PRD 367 or Exemption 6.  Undeveloped arguments may be deemed waived.  *Johnson v. Panetta*, 953 F. Supp. 2d 244, 250 (D.D.C. 2013) ("[I]t is not the obligation of this Court to research and construct the legal arguments available to the parties. To the contrary, perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are deemed waived." (internal quotation marks and citations omitted)); *see also Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work.") (quoting *United States v.*

---

[13] For clarity, when referring to the original *Vaughn* indices, the Court will use the page numbers created by the Court's electronic filing system.

*Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)).  Thus, to the extent PEER seeks summary judgment on the Exemption 6 issue, that portion of the motion is denied.

The Court cannot, however, grant summary judgment in favor of EPA based solely on PEER's failure to respond to EPA's arguments.  *See Grimes v. District of Columbia*, 794 F.3d 83, 95 (D.C. Cir. 2015) (discussing the need for the district court's independent assessment that summary judgment is warranted); *see also id.* at 97 (Griffith, J., concurring) ("[M]otions for summary judgment may not be conceded for want of opposition. . . . The burden is always on the movant to demonstrate why summary judgment is warranted. The nonmoving party's failure to oppose summary judgment does not shift that burden.").  Instead, the Court must rely on its "independent scrutiny" of the moving party's evidence.  *Id.* at 95.  On the question of whether Exemption 6 applies to PRD 367, the Court finds that EPA, relying on the Declaration of Steven Armann and the accompanying *Vaughn* indices, has borne its initial burden to demonstrate the absence of a genuine issue of material fact.  EPA has presented evidence showing that PRD 367 implicates Mr. Kaufman's privacy interest, and that the document reveals nothing of relevance about the agency's actions.  *See* Armann Decl. ¶ 33; *Vaugh* Index at 94–95.  Aside from the unsupported factual conclusion that Exemption 6 does not apply, *see* PEER Statement of Disputed Facts ¶ 19, PEER has done nothing to designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Therefore, the Court finds there is no genuine issue of material fact and will grant summary judgment for EPA on this issue.

## V.  CONCLUSION

For the foregoing reasons, EPA's Motion for Summary Judgment (ECF No. 18) is

**GRANTED IN PART AND DENIED IN PART**, and PEER's Cross-Motion for Summary

Judgment (ECF No. 20) is **DENIED**.  An order consistent with this Memorandum Opinion is

separately and contemporaneously issued.

Dated:  September 30, 2016                                    RUDOLPH CONTRERAS
                                                             United States District Judge